# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | Sidney I. Schenkier |
|---|---|---|---|
| **CASE NUMBER** | 99 C 352, 99 C 2599, 99 C 2292 | **DATE** | 11/30/2000 |
| **CASE TITLE** | Mary C. Schoeberle vs. U.S.A., et al  Alison Cook v. U.S.A., et al  Mary Leiske v. U.S.A., et al | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION AND ORDER.** All matters subject to the 08/29/00 referral [doc. #41] for case 99 C 352, the 09/07/00 referral [doc.# 22] for case 99 C 2292 and the 09/07/00 referral [doc. # 25] for case 99 C 2599 having been concluded the three referrals are hereby terminated.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | Document Number |
| ✓ | Notices mailed by judge's staff. | DEC - 1 2000 | |
| | Notified counsel by telephone. | date docketed | 27 |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 11/30/2000 | |

FD-7
FILED FOR DOCKETING
00 NOV 30 PM 1:03

date mailed notice

JJK courtroom deputy's initials

Date/time received in central Clerk's Office

JJK mailing deputy initials

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

**DOCKETED**

DEC - 1 2000

MARY C. SCHOEBERLE, Individually, and as )
Special Administrator of the ESTATE OF )
ANDREW P. SCHOEBERLE, Deceased )
                                    )    No. 99 C 0352
        Plaintiffs, )
                                    )    District Judge Ronald A. Guzman
vs. )
                                      )    Magistrate Judge Sidney I. Schenkier
UNITED STATES OF AMERICA, *et al.*, )
                                      )
        Defendants. )

---

ALISON COOK, on behalf of the ESTATE OF )
JAMES COOK, and ALISON COOK, individually, )
        Plaintiffs, )
                                      )    No. 99 C 2599
vs. )
UNITED STATES OF AMERICA, *et al.*, )
        Defendants. )

---

MARY LEISKE, Individually, and as Special )
Administrator of the ESTATE OF ROY C. )
LEISKE, Deceased, and KEVIN LEISKE, )
Individually, )
                                      )
        Plaintiffs, )
                                      )    No. 99 C 2292
vs. )
UNITED STATES OF AMERICA, *et al.*, )
        Defendants. )

## MEMORANDUM OPINION AND ORDER

These three related cases arise from an air crash that killed a pilot and his two passengers on

April 29, 1996. The plaintiffs are: Mary Leiske, personally and representing the estate of her



deceased husband, the pilot, Roy Leiske, and Kevin Leiske ("the Leiske plaintiffs"); Mary C. Schoeberle, individually and representing the estate of her deceased husband, Andrew P. Schoeberle ("the Schoeberle plaintiffs"); and Alison Cook, individually and representing the estate of her deceased husband, James Cook ("the Cook plaintiffs"). All plaintiffs have sued (1) the United States of America ("United States") under the Federal Tort Claims Act ("FTCA") 28 U.S.C. §§ 2671, *et seq.*, based on alleged conduct by air traffic controllers employed by the Federal Aviation Administration ("FAA"), and (2) Signature Flight Support Corporation ("Signature Flight") under state common law, based on its alleged conduct as an aircraft maintenance facility. In addition, the Schoeberle plaintiffs have asserted state common law claims against (1) Monarch Aviation Services ("Monarch"), which owned the aircraft, and (2) the Leiske Estate, based on the alleged conduct of the deceased pilot.

Plaintiffs in all three cases have moved for a choice of law determination on liability and damage issues; their consolidated motion is docketed in the *Schoeberle* case (doc. # 38). The United States and Signature Flight have moved for a choice of law ruling; their motion also is docketed in the *Schoeberle* case (doc. # 40). Those motions are pending before this Court pursuant to referral orders entered in all three cases (*Schoeberle*, doc. # 41; *Cook*, doc. # 25; *Leiske*, doc. # 22). After careful consideration of the parties' positions and the applicable case law, the Court finds as follows:

1. Illinois law applies to the Leiske plaintiffs' liability claim against the United States;

2. Iowa law applies to plaintiffs' liability claims against Signature Flight, Monarch and the Leiske Estate;

3. Wisconsin law applies to plaintiffs' compensatory damages claims against the United States, Signature Flight, Monarch, and the Leiske Estate; and,

4.     Iowa's law of punitive damages applies to the Schoeberle plaintiffs' claims against Signature Flight, Monarch and the Leiske Estate.

## I.

The relevant facts for purposes of this motion are as follows. On April 29, 1996, a Cessna 421 aircraft, en route from Cedar Rapids, Iowa, to Milwaukee, Wisconsin, crashed on a farm near Bernard, Iowa. The airplane was owned and operated by Monarch, a Wisconsin corporation. Roy Leiske was Monarch's principal stockholder and sole employee. The pilot of the airplane, Mr. Leiske, and the passengers, James Cook and Andrew Schoeberle, died in the accident. Messrs. Leiske, Cook and Schoeberle all lived in Wisconsin.

On the day of the accident, Mr. Leiske had been experiencing problems with the airplane. Mr. Leiske reported fluctuating oil pressure during the last ten minutes of the inbound flight to Cedar Rapids, Iowa (Pls.' Mem. at 12; Hoff Aff., Ex. 8 ("Coogan Rpt.") 1-2). Upon arrival, the plane was losing significant amounts of oil, and oil was covering the left engine and flap (Pls.' Mem. at 13; Coogan Rpt. 1-2). After landing at Cedar Rapids, the plane initially would not start again (Pls.' Mem. at 1; Coogan Rpt. 1-2). Maintenance work was performed on the aircraft at the Cedar Rapids airport by Signature Flight, which has its principal place of business in Florida but which also conducts substantial business in Iowa and Wisconsin (Pls.' Mem. 1-2; Coogan Rpt. 2). After the maintenance was completed, Signature Flight employees and Mr. Leiske determined that the aircraft was airworthy;[1] the aircraft then departed from Cedar Rapids for the return flight to Milwaukee, Wisconsin (Pls.' Mem. at 2; Coogan Rpt. 2).

---

[1] Signature Flight disputes this fact as alleged by plaintiffs – but admits that this dispute is "not relevant to the issues before this Court" (Defs.' Opp. Mem. at 1).

3

The aircraft never made it to the planned destination. After take-off from Cedar Rapids, Mr. Leiske continued to have problems. While the aircraft was flying through airspace controlled by the Chicago Air Route Traffic Control Center ("CARTCC"), located in Aurora, Illinois (Pls.' Mem. at 32; Coogan Rpt. 2-3), Mr. Leiske contacted Federal Aviation Administration ("FAA") Air Traffic Controllers.[2] According to the allegations in this case, air traffic control advised Mr. Leiske that although the plane was only 6.5 miles from the Monticello airport in Iowa,[3] Monticello was a non-"IFR" ("Instrument Flying Rules") airport: that is, an airport without instrumentation for pilots to use in making approaches and landings when visibility is obscured due to poor weather conditions (Pls.' Mem. at 2; Coogan Rpt. 2-3; Leiske Am. Compl. ¶ 6; Cook Am. Compl. ¶ 9; Schoeberle Am Compl. ¶ 14). Plaintiffs allege that, in fact, Monticello was an IFR airport (Pls.' Mem. at 2). Plaintiffs further allege that because of poor weather, based on this erroneous information Mr. Leiske re-routed the plane to the Dubuque Municipal Airport in Iowa, an IFR airport that was approximately 18 miles away (Coogan Rpt. 2; Leiske Am. Compl. ¶ 6; Cook Am. Compl. ¶ 9; Schoeberle Am. Compl. ¶ 14). The aircraft then traveled at least 7.5 additional miles – a distance that would have been sufficient to reach Monticello but was short of the Dubuque airport – before crashing on a farm in Jackson County, Iowa, near the town of Bernard (Pls.' Mem. at 2; Coogan Rpt. 2-3; Defs.' Mem. at 1).

## II.

---

[2]Given that the plane was flying from Iowa to Wisconsin through airspace controlled by CARTCC, an FAA facility in Illinois, it is safe to say that the flight plan for the Cessna 421 contemplated contacts with all three states. *See In re Aircrash Disaster Near Roselawn, Indiana on October 31, 1994*, 926 F. Supp. 736, 738 n.4 (N.D. Ill. 1996).

[3]The United States contests the plaintiffs' claim that a radio transmission occurred between Mr. Leiske and the FAA when the plane was only 6.5 miles from the Monticello airport, but it acknowledges that this dispute is not relevant to the choice of law issues (Defs.' Opp. Mem. 1).

Because the parties' domiciles, events, injuries and places of business in this case touch three different states -- Illinois, Iowa and Wisconsin -- there is (not surprisingly) some disagreement concerning which state's law applies to the various liability and damages claims. Despite this disagreement, there is much that the parties agree upon concerning the rules to apply to decide the choice of law questions.

*First*, the parties agree that Illinois choice of law rules govern. In FTCA cases, the whole law, including the choice-of-law rules, of the state where the alleged negligent act or omission occurred governs the rights and liabilities of the parties. *Richards v. U. S.,* 369 U.S. 1, 6-11 (1962); *Bowen v. U. S.,* 570 F.2d 1311, 1315-16 (7th Cir. 1978). The parties agree that the alleged governmental negligence by the FAA air traffic controllers occurred solely in Illinois, and that Illinois choice of law rules govern the FTCA claims made against the United States. The parties also agree that a district court sitting in diversity in the Northern District of Illinois is obligated to apply the choice-of-law rules for the State of Illinois. *See Fredrick v. Simmons Airlines, Inc.,* 144 F.3d 500, 503 (7th Cir. 1998); *see also Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1996). Thus, the law governing plaintiffs' state law claims likewise must be determined by reference to Illinois choice of law rules.

*Second*, the parties agree that "[t]he Illinois Supreme Court uses the 'most significant relationship' test for choosing the appropriate law in tort cases." *Fredrick,* 144 F.3d at 503. *See also Esser v. McIntyre,* 169 Ill.2d 292, 298 (1996); *Ingersoll v. Klein,* 46 Ill.2d 42, 45 (1970); Restatement (Second) of Conflicts (1971) of Laws ("Restatement"). The Restatement (Second) § 145 provides:

(1)      The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2)      Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

        (a)    the place where the injury occurred,
        (b)    the place where the conduct causing the injury occurred,
        (c)    the domicile, residence, nationality, place of incorporation and place of business of the parties, and
        (d)    the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

The principles set forth in the Restatement (Second) § 6 (Choice-of-Law Principles) are as follows:

(1)      A court, subject to constitutional restriction, will follow a statutory directive or its own state on choice of law.

(2)      When there is no such directive, the factors relevant to the choice of the applicable rule of law include

        (a)    the needs of the interstate and international systems,
        (b)    the relevant policies of the forum,
        (c)    the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
        (d)    the protection of justified expectation,
        (e)    the basic policies underlying the particular field of law,
        (f)    certainty, predictability and uniformity of result, and
        (g)    ease in the determination and application of the law to be applied.

The comments to Section 145 further observe that "courts have long recognized that they are not bound to decide all issues under the local law of a single state," but instead "[e]ach issue is to receive separate consideration if it is one which would be resolved differently under the local law rule of two or more of the potentially interested states." Restatement (Second) § 145, cmt. d. And,

indeed, the Seventh Circuit cases applying Illinois choice of law rules endorse this concept of "depecage": that is, "the process of applying rules of different states on the basis of the precise issue involved." *In re Air Crash Disaster Near Chicago, Illinois on May 25, 1979*, 644 F.2d 594, 610-11 (7th Cir. 1981). One court has explained the rationale for using depecage as follows:

> Thus, it is important to understand that the search for the applicable law is not a general one, but rather it is one that takes proper notice of the fact that the significance of a state's relationship to a particular aviation disaster may vary as a function of the particular issue presented. Consequently, under the doctrine of depecage, it is not uncommon for courts to apply the substantive law of several different states in resolving air crash cases.

*In re Air crash Disaster Near Roselawn, Indiana On October 31, 1994*, 926 F. Supp. 736, 740 (N.D. Ill. 1996) ("*Roselawn III*") (citing cases).[4] Thus, the Court must examine separately the interests involved as they relate to the separate questions of liability, compensatory damages and punitive damages.

## A.

In addition to the general choice of law principles set forth in Section 145, the Restatement (Second) speaks to the choice of law decision with respect to specific types of liability issues. Restatement (Second) § 175 covers wrongful death actions, and provides as follows:

> In an action for wrongful death the local law of the state where the injury occurred determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

Restatement (Second) § 146 covers actions for personal injury, and provides as follows:

---

[4] Of the eight *Roselawn* decisions, there were five *Roselawn* opinions published by the district court. The second decision was not picked up by Westlaw or Lexis, nor was it published. The second opinion published, however, 926 F. Supp. 736 (N.D. Ill., May 06, 1996), was named by the district court, "*Roselawn III*." We follow that nomenclature in this opinion, denoting the next opinion, reported at 948 F. Supp. 747, as "*Roselawn IV*."

In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

Finally, Restatement (Second) § 164 addresses the question of contributory fault, and provides as follows:

(1)     The law selected by application of the rule of § 145 determines whether contributory fault on the part of the plaintiff precludes his recovery in whole or in part.

(2)     The applicable law will usually be the local law of the state where the injury occurred.

Thus, the Restatement (Second) "incorporates a presumption that the local law of the state where the injury occurred should govern, unless another state has a 'more significant relationship' to the occurrence or to the parties," *In re Air Crash Disaster Near Chicago, Illinois on May 25, 1979*, 644 F.2d at 611. And so does Illinois law. *Ingersoll v. Klein*, 46 Ill.2d at 48; *Esser*, 169 Ill.2d at 298.

The reason for this presumption in liability cases is that liability is concerned primarily with assigning fault in wrongful death cases, and thus it is fair to presume that the place of injury is usually the place with the most significant relationship to the issues involved. Where the place of injury and misconduct are the same, there are even stronger reasons to choose the law of the place where the injury occurred to determine liability. Restatement (Second) § 175 cmt. e: "In the majority of instances, the actor's conduct, which may consist either of action or nonaction and the resulting injury will occur in the same state. In such instances, the local law of this state will usually be applied to determine most issues involving the tort" (citing Restatement (Second) § 145, cmts. d-e).

## B.

Different considerations apply when the issue concerns damages rather than liability. The Restatement (Second) § 178 (Damages) states that "[t]he law selected by application of the rule of § 175 determines the measure of damages in an action for wrongful death." Since Section 175 creates a presumption that the law of the place of injury will govern liability, it might appear at first blush that Section 178 applies that presumption to damages as well. However, the Restatement's "Rationale" for Section 178 demonstrates otherwise:

> The choice of law principles stated in § 6 should be applied in determining the state whose local law will be applied to determine the measure of damages in a wrongful death action. In general, this should be the state which has the dominant interest in the determination of this issue. *The state of conduct and injury will not, by reason of these contacts alone, be the state which is primarily concerned with the measure of damages in a wrongful death action.* The local law of this state will, however, be applied unless some other state has a greater interest in the determination of this issue. *In a situation where one state is the state of domicile of the defendant, the decedent and the beneficiaries, it would seem that, ordinarily at least, the wrongful death statute of this state should be applied to determine the measure of damages.*

(emphasis added).[5]

In light of these considerations, "[i]n the area of compensatory damages," the case law "supports the application of the law of the injured person's domicile, on the ground that that state

---

[5]Similarly, while Restatement (Second) § 171 (Damages) states that "[t]he law selected by application of the rule of § 145 determines the measure of damages," the "Rationale" to that section explains that the determination is not merely mechanical:

> The determination of the state of the applicable law should be made in the light of the choice-of-law principles stated in § 6. In general, this should be the state which has the dominant interest in the determination of the particular issue. The state of conduct and injury will not, by reason of these contacts alone, be the state that is primarily concerned with the measure of damages in a tort action. The local law of this state will, however, be applied unless some other state has a greater interest in this issue. When the plaintiff and the defendant are domiciled in the same state, and particularly if in addition there is a special relationship between them which is centered in this state, it would seem that this state is likely to be the state of most significant relationship with respect to the issue of damages.

has the greatest interest in ensuring that its residents are appropriately compensated for their injuries." *See In re Air Crash Disaster Near Roselawn, Indiana On October 31, 1994,* 948 F. Supp. 747, 756 (N.D. Ill. 1996) ("*Roselawn IV*") (citing cases). By contrast, the state where the injury occurred has "relatively little interest in the relief afforded to non-residents." *Id.* at 757.

However, the domiciliary state may not have the greatest interest when punitive damages are the issue. In the area of punitive damages, "many authorities suggest that the place of the misconduct and the defendants' domiciles have the greatest interest in balancing the deterrence of wrongdoing with the costs of imposing high damages upon resident business defendants." *Roselawn IV,* 948 F. Supp. at 756 (citing cases). The Restatement (Second) speaks generally to this balancing question:

> the interest of a state in having its tort rule applied in the determination of a particular issue will depend upon the purpose sought to be achieved by that rule and by the relation of the state to the occurrence and the parties. *If the primary purpose of the tort rule involved is to deter or punish misconduct, . . . the state where the conduct took place may be the state of dominant interest and thus that of most significant relationship* (see § 154, cmt. c). . . .

Restatement (Second) § 145 cmt. c (Purpose of tort rule) (emphasis added).

### III.

With these legal principles in mind, we turn to the choice of law issues raised by the parties. All relevant parties agree that the law of Iowa controls the liability issues raised by the plaintiffs against Signature Flight, thus rendering unnecessary any choice of law determination on that liability issue.[6] However, disagreements do exist concerning: (1) the law governing the alleged liability of

---

[6]Indeed, a straightforward application of the Restatement would not support another result. Signature Flight employees allegedly committed negligent acts only in Iowa; the accident occurred in Iowa; and Signature Flight alleges that Mr. Leiske committed substantial acts of negligence and other fault in Iowa.

defendants Monarch and the Leiske Estate in the case brought by the Schoeberle plaintiffs; (2) the law governing the alleged liability of the United States under the FTCA in the cases brought by the Leiske plaintiffs;[7] and (3) the law governing the plaintiffs' compensatory and punitive damages claims. We address the liability issues first, proceeding then to a discussion of the choice of law regarding compensatory and punitive damages.

**A.**

1. **The Schoeberle Plaintiffs' Liability Claims against Monarch and the Leiske Estate.**

With respect to Monarch and the Leiske Estate, the Schoeberle plaintiffs argue that the law of Iowa should be applied to determine questions of liability. The Schoeberle plaintiffs argue that Iowa law should apply because (1) the accident giving rise to the plaintiffs' claims occurred in Iowa; (2) the decedents were in Iowa on business and departed on a flight from that state, making it foreseeable that Iowa law would govern any injury to them there; (3) the relationship of the parties is centered in Iowa because Mr. Leiske's alleged negligence in maintaining and flying the plane occurred there, not Wisconsin, and the parties were injured and died in Iowa; and (4) Iowa has an interest in preventing airplane crashes from occurring within its borders (Pls.' Mem. 7, 14).

Under the Restatement and Illinois law, the place where the injury occurred presumptively applies, *e.g.*, *In Re Air Crash Disaster Near Chicago*, 644 F.2d at 611 – and that is Iowa. Indeed, that presumption is particularly strong here, because the injury and the alleged misconduct by Monarch and the Leiske Estate occurred principally in Iowa. *See* Restatement (Second) § 175 cmt.

---

[7]We also note that as of the time the choice of law motions were filed, the United States has settled the claims brought by the Cook and Schoeberle plaintiffs, so the only claim still pending against the United States is that brought by the Leiske plaintiffs (Defs.' Mem. 1).

e. Other than their bare allegation that Wisconsin law should apply, Monarch and the Leiske Estate do not make any arguments to counteract the presumptive applicability of Iowa law. Because we find no considerations under the Restatement (Second) or Illinois law that suggest Wisconsin has an interest superior to that of Iowa in the liability question as between these parties, the Court agrees that Iowa law should control the issues of liability against Monarch and the Leiske Estate.

## 2. The Leiske Plaintiffs' Liability Claim Against the United States.

The threshold issue with respect to the Leiske plaintiffs' claim against the United States is whether a true conflict exists. A choice of law determination need not be made "unless there is an actual conflict in the substantive law such that the case could have a different outcome depending on which law is applied." *See Roselawn IV*, 948 F. Supp. at 749. The United States claims that there is no conflict, even though the parties disagree on which state's substantive law of liability to apply: Illinois (urged by plaintiffs) or Iowa (urged by the United States). The United States' position is that the disagreement over which law to apply "is not *presently* significant because both laws represent comparative negligence schemes and thus there is not an outcome determinative difference" between the two laws (Defs.' Mem. 5 (emphasis added); Defs.' Opp. Mem. 11) (*citing In re Air Crash Disaster Near Chicago*, 644 F.2d at 605). *Compare* Iowa Code Ann. § 668.3 and 735 ILCS 5/2-1116.

However, as the United States acknowledges (Defs.' Opp. Mem. 12), Iowa law provides for limited joint and several liability, but Illinois only permits several liability. Under Iowa law,

> . . . the rule of joint and several liability shall not apply to defendants who are found to bear less than fifty percent of the total fault assigned to all parties. However, a defendant found to bear fifty percent or more of the fault *shall only be jointly and severally liable for economic damages* and not for any noneconomic damage awards.

Iowa Code Ann. § 668.4 (emphasis added). Under Illinois law,

> In any action brought on account of death, bodily injury to person, or physical damage to property in which recovery is predicated upon fault as defined in section 2-116, a defendant is *severally liable only* and is liable only for that proportion of recoverable economic and non-economic damages, if any, that the amount of that defendants's fault, if any, bears to the aggregate amount of fault of all other tortfeasors, as defined in Section 2-1116, whose fault was a proximate cause of the death, bodily injury, economic loss, or physical damage to property for which recovery is sought.

735 ILCS 5/2-1117(a) (emphasis added).[8] Thus, under Iowa law a defendant may be jointly and severally liable for economic damages if that defendant bears less than fifty percent of the fault. By contrast, under Illinois law, a defendant never may be jointly and severally liable for economic damages. That distinction may make a difference in this case, depending on which defendants are held liable and what share of responsibility is assigned to each such defendant. In these circumstances, a true conflict exists, and thus a choice of law determination on liability is necessary.[9]

The plaintiffs argue that Illinois law should apply to its claims against the United States because "the focus of the plaintiffs' claims is on the actions or inactions of the air traffic controllers located in Illinois" (Pls.' Mem. 31). Because the place of the FAA's alleged negligence is Illinois, the plaintiffs further argue that the parties' relationship is centered in Illinois (*Id.* at 32). Indeed,

---

[8]The Court notes that the defendants' memorandum in opposition to the plaintiffs' choice of law motion erroneously quoted Public Act 89-7 as the provision under Illinois law governing joint and several liability. P.A. 89-7 "has been held unconstitutional in its entirety by the Illinois Supreme Court in the case of *Best v. Taylor Mach. Works*," 179 Ill.2d 367, 689 N.E.2d 1057, 228 Ill.Dec. 636 (Ill. 1997). *See* Defs.' Opp. Mem. 12. The joint and several liability provision of P.A. 89-7 is therefore inapplicable here.

[9]A "true conflict" is one where the states with interests in the question presented have different laws, and the application of one state's law would conflict with or impair the interests of another state. *See In Air Crash Disaster Near Chicago, Illinois on May 1979*, 644 F.2d 594, 615 (7th Cir. 1979) (when reexamination of apparent conflict of laws reveals no way in which conflict can be resolved by a restrained or moderate interpretation, conflict is indeed a "true" conflict). *See also Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 187 (3d Cir. 1991) ("A false conflict exists if only one jurisdiction's governmental interests would be impaired by the application of the other jurisdiction's law. In such a situation, the Court must apply the law of the state whose interests would be harmed if its law were not applied").

plaintiffs claim that "[t]he subject aircraft flown by pilot Leiske was flying through airspace controlled by the [CARTCC] in Illinois" while the FAA traffic controllers were providing assistance to the plane (Pls.' Mem. 32). Consequently, argue plaintiffs, Illinois has a strong interest in deterring tortious conduct within its borders, while Iowa has "little or no interest in deterring such out-of-state conduct" (Pls.' Mem. 32).

The United States disagrees, arguing that "a conflicts analysis under the Restatement (Second) would lead to the application of Iowa's liability law, rather than the law of Illinois" (Defs.' Opp. Mem. 13). The United States' position is based on Restatement (Second) §§ 164, 172, and 175, each of which indicates that the law of the state where the injury occurred should control the issue of liability unless a state with a more significant relationship can be found (Defs.' Opp. Mem. 13). The United States asserts that there is no more significant contact than the place of injury (or accident), and the acts of negligence committed by Mr. Leiske that led up to or arguably caused the plane to malfunction and crash (*Id.*). The United States also argues that Mr. Leiske was "in Iowa" when he communicated with the FAA and wanted to land at the Monticello airport in Iowa (*Id.*). Further, the United States argues that it is merely "fortuitous" that Mr. Leiske was communicating with a controller in Illinois, rather than in Iowa, at the time of the accident (*Id.* at 13).

The Court rejects the United States position for several reasons. *First,* the Court finds that, although there is an apparent dispute about whether the aircraft was located in Illinois or Iowa airspace when it radioed air traffic control for guidance (Defs.' Opp. Mem. 13), there is no dispute that it was CARTCC in Aurora, Illinois that answered the call, and that it was the FAA traffic controllers in Illinois who gave the allegedly erroneous answer that the Monticello airport was a non-IFR landing site. The fact that the CARTCC in Aurora, Illinois answered does not by itself prove

that the aircraft was in Illinois airspace at the time it radioed for help. *See, e.g. Roselawn III*, 926 F. Supp. at 737-38 (flight that was in Indiana nonetheless was in airspace controlled by CARTCC). But it does show that the aircraft was in airspace under the jurisdiction of the FAA facility in Illinois.[10]

*Second*, it is not merely "fortuitous" that the aircraft was communicating with air traffic control in Illinois. The plan for the flight from Des Moines to Milwaukee plainly took the aircraft through airspace controlled by the Illinois air traffic controllers. While the need to communicate with those controllers about an emergency situation was unforeseen, the fact that the aircraft would pass through their jurisdiction was not.

*Third,* the place of injury in this case cannot be determined simply by locating the site where the aircraft ultimately crashed and the occupants died. The Restatement (Second) § 175, cmt. b, defines the place of injury as "the place where the force set in motion by the actor first takes effect on the person. This place is not necessarily that where the death occurs." In this case, several forces allegedly contributed to the tragic accident, and they did not all occur at one time, or in one state. It is this combination of alleged contributory forces into which the comparative negligence aspect of the conflicting laws of Illinois and Iowa dovetail. And it is this alleged combination of forces that make the choice of law determination more complex than one where the place of injury and misconduct are the same. *Cf.* Restatement (Second) § 145, cmts. d-e. In this case, although the aircraft crash and resulting deaths occurred in Iowa, on this choice of law question the alleged

---

[10]In *Roselawn III*, the court commented that "[t]he manner in which federal air traffic controllers choose to partition airspace has no bearing on the location of the decedents' injuries or the interests of the several states in this litigation." 926 F. Supp. at 742 n. 9. That court's observation, made in the context of analyzing choice of law for compensatory damages in a case where the United States was not a defendant, does not apply here to the question of what law will govern the liability *vel non* of the United States.

misconduct of the United States (not Mr. Leiske) is at issue, and that conduct occurred in Illinois. Moreover, the "injury" – as defined by the Restatement (Second) § 175, cmt. b. – occurred at least in part (with respect to the United States' alleged responsibility for it) in airspace under the jurisdiction of the air traffic controllers in Illinois, who allegedly gave the erroneous advice about the non-IFR status of the Monticello airport.

*Fourth*, we find that Iowa's relationship to the crash itself is outweighed by Illinois' interest on this specific question. With respect to liability, the principle interest of the state where the accident occurs is in "ensuring that persons who cause injury do not escape liability." *Roselawn IV*, 948 F. Supp. at 758. In this case, that interest is served by application of either Iowa or Illinois law. But we believe Illinois' interest is stronger because while Iowa's primary concern is with the defendants whose alleged misconduct occurred within its borders and its airspace, Illinois' concern is with the party acting within its airspace borders – the United States. The fact that the airplane crashed in Iowa was somewhat fortuitous, given the aircraft's proximity to both Illinois and Iowa. Thus, in the overall balance of competing considerations with respect to the United States, the place of the accident is not entitled to great weight.

Accordingly, given that both the alleged negligent  misconduct and the alleged fault attributable to the United States occurred in Illinois, the Court finds that Illinois law, not Iowa law, controls the liability aspects of the Leiske plaintiffs' claims against the United States under the FTCA.

## B.

A true conflict also exists with respect to both the compensatory and punitive damage claims in this case, which requires the Court to determine the law that will apply to those claims. We address the compensatory damage issues first.

### 1.    Compensatory Damages.

Under Iowa law, there is no limit on the amount of compensatory damages recoverable for loss of society and companionship, but in Wisconsin there is a limit – which recently has become more stringent.

When the accident in this case occurred on April 29, 1996, Wisconsin law provided for a cap of $150,000 for non-economic damages in adult wrongful death actions. *See, Neiman v. American National Property and Casualty Company,* 613 N.W.2d 160, 161 (Wis. 2000) (citing Wis. Stat. § 895.04(4) (1995-96)). In April 1998, the statute was amended to increase that cap to $350,000. The Wisconsin Legislature specified that this amendment was to be applied retroactively "to actions commenced on the effective date [April 28, 1998] of this subsection." 97 Wis. Act 89. *See also* Wis. Stat. § 895.04(4). Because these cases were filed after April 28, 1998, the increased cap of $350,000 would on its face appear to apply even though the accident occurred prior to the amendment. However, on July 7, 2000, the Wisconsin Supreme Court overturned the retroactive application of the statute. *Neiman,* 613 N.W.2d at 167. Therefore, the pre-amendment $150,000 limit on damages for loss of society and companionship applies if Wisconsin law is chosen as the law governing the compensatory damage issues in this case.

Not surprisingly, the plaintiffs seek application of Iowa law (which would not limit their potential damages for loss of society) (Pls.' Mem. 23), while defendants urge the application of

Wisconsin law (which would place a ceiling of $150,000 on that element of the plaintiffs' potential recovery in each case) (Defs.' Mem. 12). In particular, plaintiffs allege that Iowa law controls because the accident and the injury took place in Iowa, and the alleged negligence giving rise to the accident and injury took place in Iowa. Plaintiffs argue that under the Restatement, it is presumed that the law of the place of injury applies to the question of damages where the place of injury is not fortuitous. The plaintiffs argue that Iowa was not a fortuitous location for the accident and the injury because it was the state where the flight originated, and it was the state where all three decedents regularly traveled for business (Pls.' Mem. 18-19).[11] Plaintiffs claim that in cases where these factors are present, courts have rejected the fortuity rationale and applied the presumption (Pls.' Mem. 19) (citing *Jaurequi v. John Deere Co.*, 986 F.2d 170, 175 (7th Cir. 1993); *Price v. Litton Systems, Inc.*, 784 F.2d 600, 605 (5th Cir. 1986); and *Wert v. McDonnell Douglas Corp.*, 634 F. Supp. 401, 404 (E.D. Mo. 1988)).

The defendants counter that although there is a "presumption" under the Restatement (Second) to apply the law of the state where the injury occurred, this presumption virtually disappears when the issue to be determined involves damages in a wrongful death case (Defs.' Opp. Mem. at 3-4) (citing *Cortes v. American Airlines, Inc.*, 177 F.3d 1272, 1297 (11th Cir. 1999), *cert. denied*, 120 S.Ct. 980 (2000); *Roselawn III*, 926 F. Supp. at 746). Moreover, the defendants argue that the presumption should not apply in this case because the place of injury, Iowa, was fortuitous

---

[11]The fact that Signature Flight did substantial business in Iowa does not weigh in favor of choosing Iowa's state law over Wisconsin's law, because Signature Flight also does substantial business in Wisconsin. Moreover, the state with the most significant relationship for purposes of compensatory damages issues is not necessarily the state where the misconduct occurred (namely, Iowa and/or Illinois), but the state with an interest in compensation for the injured resident plaintiffs and/or protection for resident defendants from excessive liability. *See Roselawn III*, 926 F. Supp. at 746 (citing and quoting John B. Austin, *A General Framework for Analyzing Choice-of-Law Problems in Air Crash Litigation*, 58 J. Air L. & Com. 909, 962-63 (Summer 1993)).

given that the plane was scheduled to travel through three states during the intended flight (*i.e.,* it originated in Iowa on takeoff; flew through airspace controlled by an FAA facility in Illinois; and was to land in Milwaukee, Wisconsin) before Mr. Leiske attempted to re-route the plane to the Dubuque, Iowa airport. The defendants claim that Wisconsin law should be used to determine the compensatory damage issue because Wisconsin is the domiciliary state of each of the decedents and his survivors, and Monarch is (or was) a Wisconsin corporation.[12] The defendants argue that the holding in *Roselawn IV* supports their position that the domiciliary state's law should be applied in cases such as this because the place of injury is fortuitous. *See Roselawn IV,* 948 F. Supp. at 756 (law of decedents' domicile chosen over place of injury on grounds that domiciliary states had "greatest interest in ensuring that its' residents [were] appropriately compensated for their injuries" because place of injury was fortuitous).

The Court finds that Wisconsin rather than Iowa law applies to the compensatory damage claims. In making this determination, the Court recognizes that it "cannot simply add up the factors delineated in Section 145(2) and then apply the law of the sovereign with the greatest numerical total . . . ." *Judge v. American Motors Corp.,* 908 F.2d 1565, 1569 (11th Cir. 1990). Instead, the Court must make a qualitative analysis of the strength of each state's interest in having its law govern compensatory damages in this case, an analysis guided by "the factors delineated in Section 6 to determine which sovereign has the most significant contact." *Id.* While the importance of the seven factors listed in Section 6 "varies depending on the nature of the issue that underlies the conflict of laws," *Cortes,* 177 F.3d at 1299 (citing § 145 cmt. b), the factors most important in wrongful death

---

[12]The fact that the United States has an FAA presence and Signature Flight does business in Wisconsin does not weigh heavily in favor of choosing Wisconsin law in this case because those contacts are not necessarily connected to the parties or the accident in this case, and thus there is no direct "relationship" with Wisconsin on this basis.

cases are the relevant policies of the forum where the case was filed and the other interested states. *Id.* In this case, those policy interests lead to the choice of Wisconsin law for several reasons.

*First,* although the Restatement (Second) provides that the place of injury usually determines the rights and liabilities of the parties, any preference for applying law of the state in which the injury occurred "all but disappears when the conflict of laws involves the issue of damages in wrongful death actions." *Cortes,* 177 F.3d at 1297. Indeed, the commentary to the Restatement (Second) section on wrongful death damages specifically states that the focus must be on ascertaining "the state which has the dominant interest in the determination of this issue [of damages]," and that the state where the injury and the challenged conduct occurred "will not, by reason of these contracts alone, be the state which is primarily concerned with the measure of damages in a wrongful death action." Restatement (Second) § 178 (Damages), Rationale. Thus, when dealing with the issue of compensatory damages, there is no basis for a presumption that the state where the injury occurred is more interested in the question of compensatory damages than the domiciliary state of the decedents and their survivors.

*Second,* we believe that Wisconsin has a stronger interest than Iowa in applying its law of compensatory damages in this case. A state's law regarding compensatory damages reflects a balance of the desire to fairly compensate its citizens for injuries they suffer, and the goal of creating a climate conducive to business by protecting "resident defendants from excessive claims." *E.g., Roselawn IV,* 948 F. Supp. at 757 (*citing Chicago Air Crash,* 644 F.2d at 610). In this case, Wisconsin has an interest superior to that of Iowa on the question of ensuring appropriate compensation, as all decedents and their survivors are Wisconsin residents. *See Roselawn IV,* 948 F. Supp. at 756. Indeed, the case can be made that "the place of injury has relatively little interest

in the relief afforded non-residents." *Roselawn IV*, 948 F. Supp. at 757. In any event, it is hard to see how any interest that Iowa possesses in fair compensation to Wisconsin residents injured within Iowa borders is undermined by applying Wisconsin law, which reflects Wisconsin's judgment as to what maximum level of compensation for loss of society is fair for Wisconsin residents.

Moreover, two of the defendants – the Leiske Estate and Monarch – are Wisconsin residents; the remaining two defendants – Signature and the United States, through the FAA – also have a presence in Wisconsin. The presence (although not residence) of all defendants in Wisconsin, along with the decedents and their survivors, also augers in favor of applying Wisconsin law. *Cf.* Restatement (Second) § 178 (Damages), Rationale ("[i]n a situation where one state is the state of the domicile of the defendant, the decedent and the beneficiaries, it would seem that, ordinarily at least, the wrongful death statute of this state should be applied to determine the measure of damages").

Since none of the four defendants is an Iowa resident, Iowa has no greater interest than Wisconsin in seeing to it that the level of compensation available to injured parties does not deter people from doing business in the state. Indeed, Iowa's interest on this score is weaker than Wisconsin's interest, as two of the defendants are Wisconsin residents. And Iowa's interest in protecting businesses from "excessive claims" certainly is not compromised by applying Wisconsin law, which provides a ceiling on recoverable damages for loss of society.

*Third,* it was not entirely fortuitous that the injury occurred in Iowa, since the flight departed from Iowa. But the place of the accident was fortuitous in the sense that the accident could have occurred in any of three states that the aircraft planned to cross on the trip from Des Moines to Milwaukee. The fortuity of the place of the accident is underscored by the fact that the accident

occurred as the aircraft was headed for the Dubuque airport, which was not the planned destination. In these circumstances, the rationale of the *Roselawn* case is persuasive. The law of the state of injury should give way where the place of the accident was somewhat fortuitous, and the domiciliary state is the state of all the decedents and their survivors. *See Roselawn III*, 926 F. Supp. at 745-46; *Roselawn IV*, 948 F. Supp. at 756; *see also Cortes*, 177 F.3d at 1297.

The cases cited by plaintiff in support of their position that it was not merely fortuitous that the accident occurred in Iowa are distinguishable. *See Jaurequi v. John Deere Co.*, 986 F.2d 170, 175 (7th Cir. 1993); *Price v. Litton Systems, Inc.*, 784 F.2d 600, 605 (5th Cir. 1986); *Wert v. McDonnell Douglas Corp.*, 634 F. Supp. 401, 404 (E.D. Mo. 1986). Each of those cases held that the state where the injury occurred was not fortuitous because the decedents had a relationship to it, namely an ongoing business relationship, as opposed to a relationship simply based on coincidental proximity -- the classic "flyover" case where a decedent is simply passing through a state's airspace borders from one place to another. *Jaurequi*, 986 F.2d at 175; *Price*, 784 F.2d at 605; *Wert*, 634 F. Supp. at 404. This case is not merely a flyover case; plaintiffs are correct on that point. And it is true that the decedents had an ongoing business relationship with Iowa. But, the *Price* case is distinguishable because, unlike here, the "fatal flight was not scheduled to travel beyond the borders of that state." 784 F.2d at 605; *see also Roselawn III*, 926 F. Supp. at 742 (noting that "[i]n cases involving wholly interstate air travel courts have rejected the fortuity argument"). By contrast, the accident flight here was not intended to remain in Iowa, but was scheduled to depart the state and travel to Wisconsin.

The facts of *Jaurequi* and *Wert* disclose the same distinction: in each of those cases the decedent was injured while ensconced within the state's borders and was not attempting to leave the

state. *Jaurequi,* 986 F.2d at 171, 175 (Jaurequi was injured while stationed in Missouri and, but for

the injury, "would have remained in Missouri for an extended period"); *Wert,* 634 F. Supp. at 404

(Wert injured while conducting simulated bombing runs in Arizona, and both took off from and

planned to land at the same air base in Arizona). In none of those cases could it be said, as here, that

the accident just as easily could have occurred in another state. And, in none of those cases was

there another state with a supervening interest in having its law apply – as is the case here with

Wisconsin on the question of compensatory damages.

*Fourth,* application of the law of the decedents' domicile for compensatory damage purposes

serves the policies articulated in Restatement (Second) § 6 in other respects. Applying Wisconsin

law promotes the needs of the interstate commerce system, because it minimizes forum shopping (for

a state that gives larger compensatory damage awards), and it promotes certainty. *Roselawn III,* 926

F. Supp. at 746.

In sum, we find that the application of the law of the decedents' domicile on the issue of

compensatory damages, which is concerned with compensation rather than conduct, best supports

the policies underlying the Restatement (Second's) approach. *Roselawn IV,* 948 F. Supp. at 749.

We thus hold that Wisconsin law applies to the issue of compensatory damages recoverable in these

cases.

## 2.    Punitive Damages.

There is only one set of plaintiffs making a claim for punitive damages:  the Schoeberle

plaintiffs seek punitive damages from Signature Flight, Monarch and the Leiske Estate under Iowa

law. Those defendants argue that any liability for punitive damages should be governed instead by

Wisconsin law. There is a true conflict regarding this issue because in Wisconsin, punitive damages

are recoverable in a survival action for the period of time that the decedent experienced pain and suffering prior to death, but are not recoverable in a wrongful death action. *Wangen v. Ford Motor Co.,* 294 N.W.2d 437, 465 (Wis. 1980). In Iowa, punitive damages are recoverable against a corporation for the acts of a negligent employee in both survival and wrongful death actions. *State v. Izzolena,* 609 N.W.2d 541, 545 (Iowa 2000). *See also Briner v. Hyslop,* 337 N.W.2d 858, 867 (Iowa 1983). Thus, in this wrongful death action, the Schoeberle plaintiffs may seek punitive damages only if Iowa law applies.

As with all other conflicts, the Court must apply the law of the state with the "most significant interest." *In re Air Crash Disaster Near Chicago,* 644 F.2d at 611. Both sides recognize that "[c]hoice of law determinations with respect to punitive damages are governed by the purpose of such damages" (Pls.' Mem. 7; Defs.' Opp. Mem. 7). *See also Chicago Air Crash,* 644 F.2d at 613. Both sides also recognize that two of the primary purposes underlying the allowance of punitive damages are "punishment of the defendant and deterrence of future wrongdoing." *Id.* The purpose of disallowing such damages is protection of defendants from excess financial liability. *Id.*

When a balance between punishment and deterrence on the one hand, and protection from excessive liability on the other, must be struck, "it is fitting that the state whose interests are most deeply affected should have its local law apply." *In re Air Crash Disaster Near Chicago,* 644 F.2d at 613 n.21. In this case, the Court finds that the state with the most significant interest on this question is Iowa. Iowa was not only the place of injury, but it was also the place of most of the alleged misconduct by these defendants. Iowa has an obvious interest in having its law govern whether to punish those responsible for any such misconduct. Iowa also has an obvious interest in

deterring such misconduct and occurrences in the future, since it was Iowa, not Wisconsin, which was called upon to respond to the crash and to deal with its tragic aftermath.

These interests, in the Court's view, weigh more heavily in the balance than Wisconsin's interests in the parties and the flight. The fact that the decedents resided in Wisconsin is entitled to little weight, as the goal of punitive damages is not to compensate victims but to punish and deter misconduct. *See, e.g., Chicago Air Crash*, 644 F.2d at 613 ("nor do the domiciling states have an interest in imposing punitive damages on the defendants"). Defendants nonetheless urge that Wisconsin law should apply, pointing out that: (1) the flight was contracted in Wisconsin; (2) the flight originated in Wisconsin; (3) the flight was scheduled to return to Wisconsin; (4) Monarch and Signature Flight did substantial business in Wisconsin; (5) Signature Flight allegedly provided service to the subject aircraft in Wisconsin; and (6) some of Mr. Leiske's alleged negligent acts were committed in Wisconsin. However, the first three of these factors carry little weight, as they do not touch the alleged causal forces of the accident. While Signature Flight and Mr. Leiske engaged in some conduct in Wisconsin, the most serious alleged misconduct by these defendants occurred in Iowa. And, while Monarch and Signature did business in Wisconsin, they also did business in Iowa.

On these facts, Wisconsin's interest in protecting its resident corporate defendant (Monarch) from excessive liability is outweighed by Iowa's interest in applying its punitive damage law to conduct within its borders.[13] The application of Iowa law is consistent with the Restatement

---

[13]We recognize that Florida also may have an interest in protecting its resident corporations from excessive liability, because Florida is the principal place of business for Signature Flight. Florida allows punitive damages, but limits them to "three times the amount of compensatory damages . . . ." Fla. Stat. § 768.73 (1996). But Signature Flight has not argued for the application of Florida law. Although Florida may have an interest in the punitive damages question for the reasons noted above, we believe that the absence of an argument for application of Florida law by Signature Flight reveals what is apparent to the Court, namely, that the states of Iowa and Wisconsin have more significant interests at stake, and thus the conflict on this question is primarily between those two states (Defs.' Opp. Mem. 7-8). *See also* Restatement (Second) § 145(2)(c) and cmt. e.

(Second) § 145 cmt. c, which indicates that where deterrence or punishment of misconduct is the purpose to be served, "the state where the conduct took place may be the state" with the "dominant interest" and the "most significant relationship." We find that Iowa is that state with respect to the issue of punitive damages.

## CONCLUSION

For the reasons discussed in this opinion, the plaintiffs' motion for choice of law determination (doc. # 38) is granted in part and denied in part; and defendants' motion for choice of law determination is also granted in part and denied in part (doc. # 40). In particular, the Court holds that:

1. Illinois law of liability applies to the Leiske plaintiffs' liability claim against United States;

2. Iowa law of liability applies to plaintiffs' claims against Signature Flight, Monarch, and the Leiske Estate;

3. Wisconsin law applies to plaintiffs' compensatory damages claims against the United States, Signature Flight, Monarch and the Leiske Estate; and

4. Iowa law applies to the Schoeberle plaintiffs' punitive damages claims against Signature Flight, Monarch and the Leiske Estate.

ENTER:

SIDNEY I. SCHENKIER
United States Magistrate Judge

Dated: November 30, 2000

26